UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON SCHIEFEL,

    Plaintiff,

v.

KIMBERLY NAPIER et al.,

    Defendants.

Case No. 26-10120
Honorable Laurie J. Michelson

_____

**OPINION AND ORDER GRANTING MOTION FOR LEAVE TO FILE AN
AMENDED COMPLAINT [11] AND PARTIALLY DISMISSING
AMENDED COMPLAINT [11]**

_____

Brandon Schiefel is currently incarcerated at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. On January 13, 2026, Schiefel filed a 77-page complaint against 17 Michigan Department of Corrections employees. (ECF No. 1.) He alleges Defendants retaliated against him for filing grievances, interfered with his legal mail, and put him at risk of physical harm, among other constitutional violations. (*Id.*) On May 1, 2026, Schiefel filed a motion for leave to file an amended complaint, along with the proposed amended complaint, totaling 105 pages. (ECF No. 11.)

Since the Court granted Schiefel's application to proceed without prepaying fees or costs (ECF No. 5), the Court must screen the complaint. 28 U.S.C. § 1915(e)(2)(B). For the reasons that follow, the Court will dismiss Defendants Cobb, Morrison, Onwannibe, Sierminski, Graff, and Stevenson Graff, Sutherland, Deane,

Headen, Hudson, Gonzales, Saunders, Rose, and Shewell. The Court will also dismiss Schiefel's First Amendment legal mail claim, his Fourteenth Amendment Due Process claim, and his Eighth Amendment claim predicated on the denial of meals, interference with medical care, and breach of confidentiality. And because Schiefel may amend as a matter of right, his motion for leave to amend is GRANTED. (ECF No. 11)

## I. Background

Schiefel alleges that from October 2025 through January 2025, multiple prison officials at JCF engaged in retaliatory and harassing conduct toward him in response to his filing of lawsuits and grievances. This saga started around October 8, 2025, when, according to the complaint, Defendants Napier (the warden's administrative assistant), Hill (a resident unit manager), and Hursh (a corrections officer) read Schiefel's confidential legal mail—a status report in a civil suit against a former MDOC employee. (ECF No. 11, PageID.207–208.) After this, Schiefel says "JCF staff retaliating against [him]." (*Id.* at PageID.209.) So for the next three days, Defendants Adkins, Prins, Mosely, and Hursh (all corrections officers), conducted separate searches of Schiefel's cell, during which they "made a mess," and reviewed his legal materials. (*Id.* at PageID.209–212.) Schiefel believes these searches were retaliatory under the First Amendment. (*Id.* at PageID.212 ("Ever since Defendants Napier and Hill had possession of the Plaintiff's joint status report making them aware of his litigation [,] [a]ll staff at JCF began harassing the Plaintiff.").)

Further, he alleges that Napier and Hill, along with other staff, initiated a broad pattern of harassment and retaliation by spreading rumors about him to other inmates. (*Id.* at PageID.212–213.) Specifically, he says Defendants Florek, Acosta, and Saunders (all nurses) told other inmates that he had HIV and herpes. (*Id.*) He believes this too was retaliation and put him at risk of harm from other inmates in violation of the Eighth Amendment. (*Id.*)

Thereafter, Schiefel filed numerous grievances (*id.* at PageID.213), but he says the unconstitutional actions continued. He alleges the following additional incidents:

- On November 6, 2025, he alleges Officer Adkins called him derogatory names, like "stalkerish" and "creeper." (*Id.* at PageID.215.)

- On November 7, 2025, when Schiefel's cellmate requested a transfer due to "not liking [him]," Officers Hursh and Adkins refused this request, despite the risk that the cellmate would, in turn, harm Schiefel. (*Id.* at PageID.216–217.) He says the following officers disregarded his concerns that forcing the cellmate to bunk there would put Schiefel in imminent harm: Johnsen (assistant resident supervisor), Hill (resident unit manager), McCallum (Assistant Deputy Warden). (*Id.*) He says the cellmate ultimately went to segregation "to avoid the cell assignment" and the two did not bunk together. (*Id.*)

- On November 11, 2025, Schiefel says he attempted to turn in body camera forms, but Officer Antes threatened him with segregation. (*Id.* at PageID.217.)

3

- On November 13, 2025, Schiefel says he was on the yard exercising when Officer Onwannibe approached him and asked for his ID card. (ECF No. 1, PageID.16.) Onwannibe believed Schiefel was on sanctions and thus not permitted to be on the yard. Schiefel alleges that Onwannibe loudly stated that he would check whether Schiefel was, in fact, permitted to be there. (*Id.*)[1]

- On November 22, 2025, Schiefel says Officer Graff made mocking and "sarcastic" remarks to him while in the medication-assistance treatment line. (ECF No. 11, PageID.219.) Schiefel believes Graff's comments evinced knowledge about his prior grievances, which showed an "ongoing campaign of harassment against the plaintiff." (*Id.* at PageID.219–220.)

- On November 23, 2025, Schiefel alleges Officer Moseley yelled at him and threatened him with segregation after he requested grievance and body camera forms. (*Id.* at PageID.220–221.) But Schiefel filed the forms anyway. (*Id.*)

- On December 2, 2025, Schiefel asserts Officer Prins told other inmates that he is a snitch, which threatened his safety. (*Id.* at PageID.221–222.) And he says Prins made threatening remarks to him. (*Id.*)

- On that same day, Schiefel says Officers Prins, Sierminski, and Stevenson denied him entry to the Chow Hall and threatened him with segregation.

---

[1] The allegations against Onwannibe were present in the initial complaint, but not in the amended complaint. However, Schiefel did not dismiss Onwannibe from the complaint.

(*Id.* at PageID.223–224.) Schiefel missed a meal that day as a result. (*Id.*) He says the same thing happened again on December 28, 2025, resulting in a second missed meal. (*Id.*)

- Later on December 2, 2026, when Schiefel submitted paperwork requesting body camera footage, he alleges Officer Nangle loudly referred to him as a "snitch," in the presence of other inmates, placing him at risk of harm and deterring further grievances. (*Id.* at PageID.224–225.)

- On December 3, 2025, Schiefel alleges Officer Prins suggested his cellmate should assault Schiefel. (*Id.* at PageID.225.)

- Around this same time, Schiefel says Officer Wheeler, in coordination with Officer McCallum, revoked a bond for plaintiff, "to retaliate against the body camera forms turned in 2 hours prior." (*Id.* at PageID.236.) Then he says he was placed in segregation until January 27, 2026. (*Id.* ("Wheeler and McCallum's actions placed the Plaintiff in segregation for no just reason . . . .").)

- On January 21, 2026, Schiefel alleges Officer Barlow forced him to go to the control center for a ticket review, despite Schiefel not wanting to participate in the review process "per policy 03.03.105." (*Id.* at PageID.230, 234.) It appears Schiefel was given a bond for assault and battery of a staff member. (*Id.*) But he believes Lieutenant Hudson did not give him due process by investigating the allegations against him. (*Id.*)

- That same day, he says Officer White would not let him use the toilet and he urinated on himself. (*Id.* at PageID.232.) He also says Officer White made inappropriate comments about his penis. (*Id.*)

- On January 27, 2026, Schiefel says Judge Sutherland, an administrative law judge, "would not listen to the Plaintiff present his case" and "came into the hearing with her mind made up that the Plaintiff was guilty no matter what." (*Id.* at PageID.232, 237–238.) This resulted in sanctions against him. (*Id.*)

- That same day, Schiefel says Defendant Rose (psychiatrist) did not get Schiefel out of segregation when he believed he was placed there in error. (*Id.* at PageID.238–239.)

- On January 30, 2026, Schiefel alleges that Nurse Deane "demean[ed]" him when she scanned his cell and found evidence of semen. (*Id.* at PageID.239–240.)

- On February 3, 2026, Sargeant Headen made "ominous" threats that insinuated Schiefel would be assaulted. (*Id.* at PageID.240–241.)

- On February 10 and 17, Schiefel says Officer Paschke restricted his phone use without a hearing. (*Id.* at PageID.241–243.) He also claims that Officer Paschke failed to give him a sanction break after 30 days as required by MDOC policy. (*Id.* at PageID.242.) Paschke did not allow a break until Schiefel had served nearly 90 days of sanctions in retaliation for filing grievances. (*Id.*)

6

- On March 23, 2026, Officer Armstrong conducted a cell search of Schiefel's room and confiscated his bunkie's tablet. (*Id.* at PageID.243–245.) Insinuating that this was due to Schiefel "snitching," Schiefel feels that Armstrong put his life at risk. (*Id.*)

- Schiefel also detailed his medical ailments (swollen legs, clogged ears) and that he believes Doctor Gonzales disregarded his symptoms. (*Id.* at PageID.244–252.) He lists appointments with Dr. Gonzales in September and February. (*Id.* at PageID.214, 245.) Schiefel was taken off site on March 16, 2026, for treatment for his symptoms. (*Id.* at PageID.250–251.) Yet he still says that he "has been denied treatment as of 4-16-26." (*Id.* at PageID.252.) He also says his privacy was violated when a non-medical staff member attended his offsite appointment with a cardiologist and when his test results were sent via regular mail without "any kind of envelope for privacy." (*Id.* at PageID.214.)[2]

- Schiefel asserts that, while he attempted to comply with the grievance policy, the grievance coordinator, Defendant Cobb, improperly rejected his grievances, restricted his ability to file grievances, and placed him on modified access. (*Id.* at PageID.215.) And he says Warden Morrison failed

---

[2] Schiefel alleges Defendant Saunders (nurse) was the one responsible for this in his initial complaint. But in the amended complaint, Schiefel does not mention Saunders. For the sake of completeness, the Court will read the two together and consider Saunders in these allegations.

to supervise the other officers and "is responsible for the actions of his subordinates." (*Id.* at PageID.228.)

Considering the above allegations liberally, the Court construes the complaint as alleging (1) First Amendment retaliation claims; (2) a First Amendment legal mail claim; and (3) Eighth Amendment claims for failure to protect, denial of adequate medical care, and unconstitutional conditions of confinement all made applicable to the states under the Fourteenth Amendment and brought under 42 U.S.C. § 1983. Schiefel also seems to be requesting a temporary restraining order and/or preliminary injunction. (*Id.* at PageID.252.)

Along with his complaint, Schiefel submitted an application to proceed without prepaying the filing fee or costs, which was granted. (ECF No. 5.) So under the Prison Litigation Reform Act, the Court must screen and dismiss the complaint, in whole or in part, if it is frivolous, malicious, fails to state a claim for which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

## II.

Begin first with whether Schiefel has stated a claim for which relief may be granted. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And while the Court will construe a *pro se* complaint such as this one liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*), that leniency is "not boundless." *Martin*

*v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The "basic pleading requirements 'apply to self-represented and counseled plaintiffs alike.'" *Williams v. Hall*, No. 21-5540, 2022 WL 2966395, at *2 (6th Cir. July 27, 2022) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)).

## A. First Amendment: Legal Mail Claim

Inmates have a First Amendment right to receive legal mail, and prison officials generally may not open properly marked legal mail outside the presence of the inmate. *See Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003). Schiefel alleges that Defendants Napier (the warden's administrative assistant), Hill (resident unit manager), and Hursh (corrections officer) violated this right by opening, reading, and discussing, without Schiefel's consent, a joint status report prepared in connection with a pending civil lawsuit. But "[s]uch a limited and isolated event does not rise to the level of a constitutional violation." *Smith v. Goostrey*, No. 23-1025, 2023 WL 5024659, at *3 (6th Cir. Aug. 4, 2023) (finding that "tampering-with-legal-mail claim" limited to a single incident did not rise to the level of a constitutional violation); *see also Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (holding that limited and isolated events do not rise to the level of violating the Constitution)).

Thus, Schiefel's First Amendment mail claim will be dismissed.

## B. First Amendment: Retaliation (Defendants Cobb and Morrison)

Next, Schiefel alleges that Defendant Tomas Cobb, the grievance coordinator, improperly rejected his grievances, placed him on grievance restriction, and refused

9

to provide him with grievance forms. He further alleges that Defendant Bryan Morrison, the warden, failed to respond to his kites (messages) and grievances. Schiefel also generally suggests that these Defendants were aware of, or responsible for, the conduct of other staff. All of this, he says, constitutes First Amendment retaliation.

To the extent Schiefel's claims are based on the handling of grievances, they fail to state a claim. True, a prisoner has a First Amendment right to file grievances against prison officials, *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), but the First Amendment does not impose an affirmative obligation on the government to consider, respond to, or grant any relief on a prisoner's petition for redress of grievances. *See Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 464–65 (1979); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.").

Because a prisoner does not have a constitutionally protected interest in an inmate grievance procedure or the right to an effective procedure, *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005), Schiefel's claim that Cobb and Morrison failed to adequately respond to his grievance does not state a claim upon which relief may be granted. *See O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014) (holding that a defendant's denial of an administrative grievance was "insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983"); *Johnson v. Aramark*, 482 F. App'x

10

992, 993 (6th Cir. 2012) ("[T]he denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983.").

The same goes for Schiefel's challenge to his placement on modified access. Modified access status is when the inmate's access to certain areas, programs, or general population privileges is limited by the prison. In the grievance context, this typically means that the inmate must take some step, such as having his claim screened by the grievance coordinator before he is allowed to submit a grievance. *See Walker*, 128 F. App'x at 443. The Sixth Circuit has held, however, that placement on modified access does not violate a prisoner's First Amendment right to petition the government. *See Walker*, 128 F. App'x at 445–47; *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). Nor is it an adverse action for purposes of a retaliation claim. *See Walker*, 128 F. App'x at 446.

Plus, Schiefel sues Cobb and Morrison in their individual capacities, but these allegations do not support liability based merely on Defendants' supervisory roles. A civil rights plaintiff must allege the personal involvement of a defendant to state a claim under § 1983, not simple liability on a *respondeat superior* theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). That is, to hold a supervisory official personally liable under § 1983, a plaintiff must demonstrate that the official actively engaged in some unconstitutional behavior. *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). A supervisor's failure to act, without more, is insufficient to establish supervisory liability. *See Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir.

11

2016) ("[A] mere failure to act will not suffice to establish supervisory liability.") (citations omitted).

Here, Schiefel does not allege that Cobb or Morrison directly participated in the alleged retaliation, disclosure of information, or other unconstitutional conduct. This, in turn, dooms his § 1983 claim because a "supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).

Lastly, Schiefel alleges that Defendant Cobb impeded his access to the courts by failing to process his grievances. Prisoners have a constitutional right of access to the courts which states have an affirmative duty to protect. *Bounds v. Smith*, 430 U.S. 817, 821–25 (1977). To state a denial of access to the courts claim under § 1983, a plaintiff must make some showing that prejudice or actual injury resulted from the challenged conduct. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). But as discussed, Cobb was not required to respond to his grievances. And Schiefel does not allege that any legal action was dismissed, that he missed a filing deadline, or that he suffered any concrete litigation-related injury because of Cobb's conduct.

Because Schiefel fails to raise a viable claim against Defendants Cobb and Morrison, they will be dismissed from this action.

## C. First Amendment: Retaliation (Other Defendants)

Retaliation based upon a prisoner's exercise of his constitutional rights violates the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two, i.e., the adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Id.*

As to the first element, Schiefel alleges that numerous Defendants retaliated against him for filing grievances and pursuing civil litigation. The filing of non-frivolous grievances constitutes protected conduct. *Herron*, 203 F.3d at 415; *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). At this stage, the Court does not find Schiefel's grievances clearly frivolous, so by filing grievances, he engaged in protected conduct, satisfying the first element.

To establish the second element of a retaliation claim in this context, a plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. This inquiry is an objective one and does not depend on how a particular plaintiff reacted. *Hamby v. Rogers*, No. 18-154, 2018 WL 6804031, at *3 (W.D. Mich. Dec. 27, 2018). The relevant question is whether the defendant's conduct is "capable of deterring a person of ordinary firmness." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). The plaintiff need not show actual deterrence. *Id.*

Here, the alleged retaliation includes repeated cell searches, verbal harassment, threats, interference with privileges, disclosure of sensitive information, and conduct designed to expose Schiefel to harm from other inmates. Some of these actions—viewed in isolation—may appear relatively minor, such as verbal harassment, cell searches, or isolated acts of interference. However, the Sixth Circuit has cautioned that "[e]ven harassment that is 'trivial in detail' can be 'substantial in gross,' and thus sufficient to amount to an adverse action." *Parker v. Reddin*, No. 20-1106, 2020 WL 8415084, at *5 (6th Cir. Aug. 5, 2020) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). In other words, the Court must consider the cumulative effect of the alleged conduct, rather than viewing each incident in isolation. *Id.*

Schiefel alleges a sustained pattern of retaliatory conduct over six months, involving multiple Defendants and escalating in severity. According to the complaint, Defendants repeatedly searched and ransacked his cell, verbally harassed and intimidated him, spread rumors about him, interfered with his access to services, and took actions designed to deter him from continuing to file grievances and pursue litigation. Most significantly, Schiefel alleges that officers labeled him a "snitch," disclosed sensitive information about him to other inmates, and encouraged or invited other inmates to harm him. When viewed collectively, these allegations are sufficient to plausibly establish adverse action. Stated differently, a pattern of harassment combined with conduct that exposes an inmate to potential violence would deter a person of ordinary firmness from continuing to engage in protected conduct. *See Parker*, 2020 WL 8415084, at *5 (finding slurs and threats of physical violence would

deter prisoner of ordinary firmness); *Thaddeus-X*, 175 F.3d at 398 (finding harassment, physical threats, and transfer to undesirable area of prison would deter prisoner of ordinary firmness).

That leaves causation. "Temporal proximity between the alleged adverse action and the protected conduct is relevant to the causation inquiry of a First Amendment claim." *Koria v. Butts*, No. 23-130, 2025 WL 1698206, at *8 (W.D. Ky. June 17, 2025). Here, Schiefel asserts that the alleged retaliatory conduct began shortly after, and in response to, his protected activity, and he attributes retaliatory motive to Defendants based on their statements and actions. At the pleading stage, these allegations are sufficient to support an inference that the adverse actions were motivated, at least in part, by his protected conduct.

So these allegations are sufficient to state a retaliation claim as to some remaining Defendants.  But not all. The following allegations are too conclusory: (1) allegations regarding Officer Onwannibe asking for Schiefel's ID card while on the yard, (2) Sierminski and Stevenson denying Schiefel entry to the Chow Hall on two occasions, (3) Graff making "sarcastic" comments to Schiefel while in the medication-assistance treatment line, (4) Nurse Deane checking his cell for semen, and (5) Headen making vaguely "ominous[]" threats such as "we're gonna start playing a new game" while monitoring the medication line. (ECF No. 1, PageID.16, 17, 19–20; ECF No. 11, PageID.226–230, 239–243.)[3]

---

[3] To the extent these allegations are present in the amended complaint (ECF No. 11), these Defendants are dismissed.

In sum, Schieffel's retaliation claims against Defendants Onwannibe, Sierminski, Stevenson, Graff, Deane, and Headen are insufficient to state a claim and they will be dismissed from this action. But Schiefel's First Amendment retaliation claims may proceed against the other remaining Defendants.

### D. Fourteenth Amendment Due Process

Schiefel alleges that ALJ Sutherland violated his due process rights because she "came into the hearing with her mind made up that the plaintiff was guilty no matter what." (ECF No. 11, PageID.130.) But this fails to state a claim because she is protected by judicial immunity. *Nelson v. Lewis*, No. 22-12168, 2023 WL 22904, at *3 (E.D. Mich. Jan. 3, 2023) ("[ALJs] enjoy absolute judicial immunity from damages arising out of actions within the officer's authority."). Same goes for Schiefel's allegations that Lieutenant Hudson did not adequately investigate allegations against him in the prison misconduct hearing. This is because "Michigan prison hearing officers are entitled to 'absolute immunity from liability with respect to their judicial acts.'" *Goldsmith v. Sharrett*, 614 F. App'x 824, 827 (6th Cir. 2015) (citing *Shelly v. Johnson,* 849 F.2d 228, 229–30 (6th Cir.1988)).

So these Defendants are dismissed.

### E. Eighth Amendment: Denial of Meals

Schiefel claims Officer Stevenson violated his rights under the Eighth Amendment by depriving him of meals on two occasions. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" against prisoners. U.S. Const. amend. VIII. Prison officials also have a duty to provide "humane conditions

16

of confinement." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] prison official's deliberate indifference to conditions that pose a substantial risk to an inmate's health and safety violates the Eighth Amendment." *Finley v. Huss*, 102 F.4th 789, 805 (6th Cir. 2024). There is both an objective and subjective component to an Eighth Amendment claim. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The subjective component requires that the prison official act with a "sufficiently culpable state of mind." *Id.*

Schiefel cannot satisfy the objective component of such a claim because the denial of two meals does not constitute a serious deprivation of a basic human need sufficient to state an Eighth Amendment violation. *See e.g.*, *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (finding that depriving a prisoner of seven meals over six days did not rise to the level of an Eighth Amendment violation); *Moore v. Liewert*, No. 22-2056, 2023 WL 8378827, at *3 (6th Cir. Aug. 16, 2023) ("[T]he denial of a single meal, even taking into consideration [the plaintiff's] diabetes, is a *de minimis* event . . . ."). So Schiefel fails to state a claim here.

### F. Eighth Amendment: Medical Care

Next, Schiefel claims he was denied adequate medical care in the following ways. One, he says Doctor Gonzales and Nurse Saunders sent a non-medical staff member to attend his scheduled appointment with an off-site cardiologist and that this person lacked medical expertise thus compromising his privacy. And he says

Doctor Gonzales failed to adequately address his medical ailments. He says that he "has been denied treatment as of 4-16-26." (ECF No. 11, PageID.251.) But Schiefel's own complaint points to multiple medical appointments with Gonzales (September 2025 and February 2026) and off-site visits with medical professionals (October 2025 and March 2026), as well as off-site testing such as a stress echocardiogram (March 2026). (*Id.* at PageID.214, 250–251.)

Schiefel also alleges that his psychiatrist, Dr. Rose, failed to arrange for his release from segregation. He claims that, because he has been diagnosed with bipolar disorder and extreme anxiety, it is against MDOC policy to place him in extended segregation. (*Id.* at PageID.239.) Finally, Schiefel alleges that registered nurse Desiree Shewell provided insufficient care when she responded to his complaint that there was "something . . . in his ear." (*Id.* at PageID.246). Nurse Shewell assured Schiefel that there was nothing in his ear except wax, gave him mineral oil, and arranged for his ears to be flushed. *Id.* Schiefel complains that this did not solve his complaint.

As explained above, a claim of Eighth Amendment deliberate indifference to an individual's medical needs follows the same two-prong analysis comprised of objective and subjective components. *Hampton v. Vantiel*, No. 24-01480, 2026 WL 382904, at *4 (M.D. Tenn. Feb. 11, 2026). In this context, a prisoner satisfies the objective component of an Eighth Amendment claim by showing "the existence of a 'sufficiently serious' medical need." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). A prisoner satisfies the subjective component by showing "that

18

prison officials have a sufficiently culpable state of mind in denying medical care." *Id.* (citation and internal quotation marks omitted).

Schiefel fails to identify any specific way in which Saunders' absence from the telehealth appointment impeded his medical care. He does not allege facts suggesting that adequate care required the presence of a second medical professional at this specialist appointment, particularly where such an arrangement would exceed the level of care typically available to non-incarcerated individuals.

To the extent that Schiefel also claims that the attendance of a non-medical staff member at this telehealth meeting violated his right to confidentiality, this fails to state a claim. The Sixth Circuit has concluded that "the Constitution does not encompass a general right to nondisclosure of private information." *J.P. v. DeSanti*, 653 F.2d 1080, 1087–90 (6th Cir. 1981). Instead, it "has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm . . . , and (2) where the information released was of a sexual, personal, and humiliating nature[.]" *Lee v. City of Columbus, Ohio*, 636 F.3d 245, 260 (6th Cir. 2011) (quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008)). Schiefel does not claim that the non-medical employee who attended his telehealth appointment disseminated his confidential information, placed him in danger of physical harm, or that any information was sexual, personal, or humiliating in nature. He therefore does not raise a privacy concern of constitutional dimension sufficient to state a claim.

Nor does he state a claim as to alleged inadequate medical care by Dr. Gonzales, Dr. Rose, or Nurse Shewell. To the contrary, his complaint shows that he has attended multiple doctor's appointments and specialist appointments off-site between September and March, and continues to do so. "[A] mere delay in treatment is not sufficient to support a finding of deliberate indifference." *Frost v. Dep't of Rehab. & Correction*, No. 20-4146, 2021 WL 5021042, at *3 (6th Cir. June 1, 2021); *Barner v. Mackie*, No. 17-1608, 2017 WL 5633399, at *3 (6th Cir. Nov. 2, 2017) ("a short delay by itself in administering medical treatment—even an unexplained delay—is not enough to demonstrate deliberate indifference to a defendant's medical needs, but instead evinces negligence."). But that is all Schiefel alleges as to Dr. Gonzales, a brief delay among multiple appointments and tests that he *did* receive.

Likewise, as to Dr. Rose, Schiefel alleges only that she allowed him to be detained in segregation without access to mental health treatment from January 27 through February 1, 2026. (ECF No. 11, PageID.239.) But Schiefel does not claim that he otherwise would have received treatment during that six-day period or that he was denied medication; instead, he admits he received medication while in segregation. (*Id.*) Nor does he allege any facts establishing that this mental health professional had anything to do with the segregation decision. He therefore fails to state a denial of medical care claim against Dr. Rose.

As to Nurse Shewell, Schiefel asserts that the medical care she provided did not alleviate the problems he had with his ears, which he believes were caused by spiders living in his ears. (*Id.*) But an inmate's "disagreement with the testing and

20

treatment he has received . . . does not rise to the level of an Eighth Amendment violation." *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Nor does "a desire for additional or different treatment . . . suffice to support an Eighth Amendment claim." *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017); *see also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) ("Where a prisoner alleges only that the medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments.'"). Schiefel also does not claim that he was denied further care from Shewell. In fact, he indicates that further complaints were addressed by Nurse Robins. *Id.* He therefore fails to state a denial of medical care claim against Nurse Shewell.

### G. Eighth Amendment: Failure to Protect

Schiefel also asserts a claim under the Eighth Amendment based on Defendants' alleged failure to protect him from harm. Specifically, Schiefel says certain Defendants labeled him a "snitch," spread rumors about him, and encouraged other inmates to assault him, thereby exposing him to a substantial risk of serious harm.

To hold a prison official liable under the Eighth Amendment for failure to protect, the official must have had a reason to believe that the prisoner faced a substantial risk of attack beyond the ordinary danger inherent in incarceration. *Taylor v. Little*, 58 F. App'x 66, 68 (6th Cir. 2003) (finding that a "lone incident was insufficient to put prison officials on notice that Allen might attack Taylor"). When

21

an inmate is "identified as a 'snitch'" that "puts [them] at substantial risk of assault." *Westmoreland v. Butler County*, 29 F.4th 721, 729 (6th Cir. 2022) (citing *Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001) (acknowledging a prison psychologist's statement that "a prisoner in prison definitely doesn't want to be labeled a snitch, that's probably the worst label that you . . . could have put on you if you were in prison" (citation omitted)). Since Schiefel alleges that Officers Prins and Nangle called him a snitch within earshot of other inmates, the Court finds that Schiefel has alleged sufficient facts to support his failure-to-protect claim against these two Defendants.

The same is not true for Schiefel's claims that Defendants Florek, Acosta, and Saunders (all nurses) placed him at substantial risk of assault by telling other inmates that he had HIV and herpes. Schiefel does not allege any facts explaining how or why these statements exposed him to a comparable or particularized risk of assault. So this claim will be dismissed.

### III. Leave to amend

On May 1, 2026, Schiefel filed a motion for leave to amend his complaint along with the proposed amended complaint. (ECF No. 11.) His amended complaint is 105 pages, even longer than his 78-page original complaint. (*Compare* ECF No. 1, *with* ECF No. 11.) But, finding that Schiefel is still within the time for amendment as of right under Federal Rule of Civil Procedure 15(a), the Court grants his motion for leave to amend (ECF No. 11.)

## IV. Temporary restraining order and preliminary injunction

Schiefel states that he is seeking a TRO and/or preliminary injunction. But Eastern District of Michigan Local Rule 7.1(i) forbids such combined motions. *See* E.D. Mich. LR 7.1(h)(1) ("a motion for preliminary injunctive relief must not be combined with a complaint . . . ."). This ruling highlights the wisdom of that rule. Schiefel obviously cannot establish a likelihood of success on the merits of claims that he fails to even plausibly plead. So any request for a TRO or preliminary injunction will not be considered at this time.

## V. Conclusion

For the reasons stated above, the Court concludes that Schiefel fails to state a claim upon which relief may be granted against Defendants Cobb, Morrison, Onwannibe, Sierminski, Stevenson, Graff, Sutherland, Deane, Headen, Hudson, Gonzales, Saunders, Rose, and Shewell. The Court also concludes that his First Amendment legal mail claim, Fourteenth Amendment Due Process claim, Eighth Amendment denial of meals claim, and Eighth Amendment interference with medical care and confidentiality claim all fail to state a claim upon which relief may be granted, and thus, will be dismissed.

Accordingly, IT IS ORDERED that Defendants Cobb, Morrison, Onwannibe, Sierminski, Stevenson, Graff, Sutherland, Deane, Headen, Hudson, Gonzales, Saunders, Rose, and Shewell are DISMISSED from this case.

IT IS FURTHER ORDERED that Schiefel's First Amendment claim based on interference with legal mail is DISMISSED.

23

IT IS FURTHER ORDERED that Schiefel's Fourteenth Amendment Due Process claim based on his ALJ and prison disciplinary hearings are DISMISSED.

IT IS FURTHER ORDERED that Schiefel's Eighth Amendment claims based on the denial of two meals, alleged inadequate medical care, and alleged violations of medical confidentiality are DISMISSED.

The "Notice of Supplemental Claims" (ECF No. 8) shall be STRICKEN from the docket.

Schiefel's remaining claims—First Amendment retaliation and Eighth Amendment Failure to Protect when called a snitch—are sufficiently pled to proceed past the Court's initial screening as to Defendants Napier, Hill, Adkins, Prins, Moseley, Hursh, Florek, Acosta, Antes, Nangle, Armstrong, Johnsen, Paschke, McCallum, Barlow, White, and Wheeler.

IT IS SO ORDERED.

Dated: May 11, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE